UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNEST LEE MORRISON, | ) | CIVIL ACTION NO. 4:21-CV-1899 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| JOHN WETZEL, *et al.*, | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Ernest Lee Morrison ("Plaintiff") is an inmate at Mahanoy State Correctional Institution. He alleges that, on December 31, 2020, he was assaulted twice by a fellow inmate. Plaintiff alleges that he left the first assault with an injured wrist. As a parting remark, however, his attacker threatened to assault Plaintiff again. Plaintiff alleges he told numerous members of the prison staff about the threat, but was ignored. Later that evening, Plaintiff was attacked, sustained serious injuries, and is now confined to a wheelchair.

Currently before the Court is Defendants' motion seeking partial dismissal of Plaintiff's amended complaint. (Doc. 37). For the reasons explained in this memorandum opinion, Defendants' motion will be granted in part and denied in part.

## II.        BACKGROUND & PROCEDURAL HISTORY

On November 8, 2021, Plaintiff initiated this *pro se* civil rights action against several staff members at Mahanoy State Correctional Institution ("SCI Mahanoy"). (Doc. 1). He filed a nine-page complaint with fifteen pages of exhibits, including:

(1)    The initial review response to Grievance No. 909190, relating to the failure of corrections officers to promptly intervene when Plaintiff was assaulted by another inmate. (Doc. 1-1, p. 1).

(2)    Plaintiff's appeal of Grievance No. 909190. (Doc. 1-2, p. 1).

(3)    The facility's response to Plaintiff's appeal of Grievance No. 909190. (Doc. 1-3, p. 1).

(4)    Plaintiff's request for final review of Grievance No. 909190. (Doc. 1-4, p. 1).

(5)    The final decision upholding the initial response to Grievance No. 909190. (Doc. 1-5, p. 1).

(6)    An illegible copy of Grievance No. 909192. (Doc. 1-6, p. 1).

(7)    The initial review response to Grievance No. 909192. (Doc. 1-7, p. 1).

(8)    Plaintiff's appeal of Grievance No. 909192. (Doc. 1-8, p. 1).

(9)    The facility's response to Plaintiff's appeal of Grievance No. 909192. (Doc. 1-9, p. 1).

(10)   Plaintiff's request for final review of Grievance No. 909192. (Doc. 1-10, pp. 1-2).

(11)   A health care items receipt, documenting that Plaintiff was issued an "ace wrap" on December 31, 2020. (Doc. 1-11, pp. 1-2).

(12)   The final decision upholding the initial denial of Grievance No. 909192. (Doc. 1-2, p. 1).

(13)   An illegible copy of Grievance No. 909190. (Doc. 1-13, p. 1).

Plaintiff requested, and was granted, leave to proceed without prepaying the filing fee. His complaint was served, and the named Defendants filed a motion to dismiss. (Doc. 18). That motion was fully briefed by the parties, and then was granted. (Docs. 20, 23, 30, 31). Plaintiff was, however, given leave to amend.

On October 31, 2022, Plaintiff filed an amended complaint. (Doc. 35). Plaintiff's amended complaint is now the operative pleading in this case. Like his original complaint, the amended complaint was drafted using a pre-printed complaint form, with extra pages added. No exhibits were attached or referenced.

In his amended complaint, Plaintiff alleges that on December 31, 2020, he was assaulted twice by a man he refers to as Inmate Carter. (Doc. 35, p. 6).

The first assault took place at 9:35 a.m., while Plaintiff was working in the kitchen. *Id.* Plaintiff alleges that Inmate Carter asked Plaintiff to steal vegetables. (Doc. 35, p. 7). When Plaintiff refused Inmate Carter got angry, spit in Plaintiff's face, assaulted Plaintiff with a cane, and threatened Plaintiff with future violence. *Id.* Plaintiff attempted to defend himself by throwing water on Inmate Carter. (Doc. 35, p. 9). Plaintiff alleges that his wrist was injured during the altercation. (Doc. 35, p. 7).

Several corrections officers were aware of this first assault. Plaintiff alleges that Defendant Connolly witnessed the entire assault, and took no action. *Id.* Plaintiff also alleges that he asked Defendant Connolly for permission to go to medical, and

for permission to speak with someone from security. *Id.* Defendant Connolly disregarded or denied both requests. *Id.*

Next, Plaintiff approached Defendant Harrell. (Doc. 35, p. 7). Plaintiff reported the assault, and told Defendant Harrell that Inmate Carter planned to stab Plaintiff at 9:00 p.m. that evening. (Doc. 35, p. 8). Defendant Harrell commented that Inmate Carter should have been sent to the RHU. *Id.* Defendant Harrell took no action, and instead referred Plaintiff to Defendant Argento. *Id.*

Plaintiff went to Defendant Argento. *Id.* Plaintiff reported the assault, and the threat of future assault. *Id.* Defendant Argento gave Plaintiff a pass to medical, but did not report the assault or threat. *Id.*

When Plaintiff was in the waiting room of the medical department, he requested to speak with someone from security. *Id.* Plaintiff spoke with Defendant Taylor. (Doc. 35, pp. 8-9). Plaintiff reported the assault and threat. (Doc. 35, p. 9). Defendant Taylor took no action. *Id.*

While Plaintiff was being examined, Defendant Vance came to take Plaintiff's statement about the assault. *Id.* Plaintiff reported the assault, and the threat. *Id.* Later that day, Defendant Vance told Plaintiff that "he was not going to put Plaintiff in the Hole (RHU) for attempting to assault (throw water on) Inmate Carter." *Id.* Plaintiff was instructed to report to work as usual, and to stay away from Inmate Carter. *Id.*

At approximately 9:00 p.m. the same day, Plaintiff exited his cell to use the telephone. (Doc. 35, p. 10). Plaintiff alleges that Inmate Carter attacked him from behind. *Id.* Plaintiff was shoved into the phone, then was body slammed to the floor where he was punched, kicked and stabbed repeatedly in the back, arms, neck, and head with a shank. (Doc. 35, p. 10). Plaintiff alleges that Defendant Rittenhouse witnessed the second assault for 25 to 30 seconds before taking action. *Id.*

Plaintiff alleges that, as a result of the injuries sustained, he suffers from post-traumatic stress disorder, paranoia, nerve damage, and constant pain. *Id.* Plaintiff alleges that he cannot stand for more than two minutes at one time, and is now wheelchair bound. *Id.*

He is asserting claims against Defendants Connolly (food service manager), Harrell (a food services instructor), Taylor (Lieutenant in the RHU), Vance (Lieutenant in the Security Office), Rittenhouse (a Corrections Officer on E Block and B Pad Housing Unit), and Argento (a food services instructor) in their official and individual capacity. He alleges that all Defendants are employed at SCI Mahanoy. As relief, Plaintiff requests:

> Injunctive Relief: Permanent separation between Plaintiff and inmate Carter. Prohibition against all Defendants and their constituents (co-workers) from retaliation for this action. Monetary Relief: Compensatory damages for pain and suffering, future medical care, loss wages, and diminished quality of life. Punitive damages to deter prison officials from being indifferent towards their duty to protect in the future. Attorney's fees should a lawyer enter the case to represent Plaintiff. Costs to recoup all out of pocket costs for this action.

(Doc. 35, pp. 16-17).

On November 14, 2022, Defendants filed a motion requesting that Plaintiff's amended complaint be partially dismissed pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 37). They request that all claims against Defendants Connolly, Harrell, Argento, and Taylor be dismissed with prejudice, and that all official capacity claims against Defendants Vance and Rittenhouse be dismissed with prejudice. *Id.* They concede, for the purposes of this motion only, that the Eighth Amendment failure to protect claims against Defendants Vance and Rittenhouse should proceed to discovery. *Id.*

On November 15, 2022, Defendants filed a supporting brief. (Doc. 39). Defendants attached three pieces of evidence to their brief: (1) a legible copy of Grievance No. 909190; (2) a legible copy of Grievance No. 909192; and (3) Plaintiff's grievance history. (Docs. 39-1, 39-2, and 39-3). After being granted multiple extensions of time, Plaintiff submitted a brief in opposition on January 26, 2023. (Doc. 47). On February 6, 2023, Defendants filed a reply. (Doc. 48). Defendants attached additional documents, including:

(1)    The final appeal decision for Grievance No. 909192, (Doc. 48-1, p. 2);

(2)    The facility manager's response to Grievance No. 909192, (Doc. 48-1, p. 3);

(3)    Plaintiff's appeal of Grievance No. 909192, (Doc. 48-1, p. 4);

(4)    The initial review response to Grievance No. 909192, (Doc. 48-1, p. 5);

(5)    A copy of Grievance No. 909192, (Doc. 48-1, p. 6);

(6)     The final appeal decision for Grievance No. 909190, (Doc. 48-2, p. 2);

(7)     The facility manager's response to Grievance No. 909190, (Doc. 48-2, p. 3);

(8)     Plaintiff's appeal of Grievance No. 909190, (Doc. 48-2, p. 4);

(9)     The initial review response to Grievance No. 909190, (Doc. 48-2, p. 5);

(10)    A copy of Grievance No. 909190, (Doc. 48-2, p. 6).

Defendants' motion is fully briefed, and is ready to resolve.

## III.     LEGAL STANDARDS

Before considering the merits of this case, it is helpful to restate the familiar legal standard for resolving motions to dismiss. We will also discuss the relevant standards for PLRA exhaustion and Eleventh Amendment immunity.

### A.     FED. R. CIV. P. 12(B)(6): MOTIONS TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal for failure to state a claim upon which relief can be granted. To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth;  and (3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[1]

---

[1] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[3] The court also need not assume that a plaintiff can prove facts that he or she has not alleged.[4]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] A court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[6] This "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[5] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[6] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

'plausible on [their] face.'"[7] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[8]

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must only consider the facts alleged in the operative pleading, the documents attached to the operative pleading, documents specifically referenced in the operative pleading, indisputably authentic documents, and matters of public record.

If any other matters outside the pleadings are presented to the court and are not excluded, a Rule 12(b)(6) motion must be treated as a summary judgment motion filed under Rule 56.[9]

When matters outside the pleadings are presented along with a motion to dismiss, a court has two options.[10] First, it can ignore the matters presented outside the pleadings and continue to treat the filing as a motion to dismiss. Second, it can convert the motion to dismiss into a motion for summary judgment.[11]

---

[7] *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[8] *Id.* at 347.

[9] Fed. R. Civ. P. 12(d).

[10] *Edwards v. New Jersey*, Civ. No. 13-214, 2015 WL 5032680, at *3 (D.N.J. Aug. 24, 2015).

[11] Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed Apr. 2023 Update) ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion . . .").

> It is not necessary that the moving party actually label a motion to dismiss for failure to state a claim as one under Rule 12(d) in order for it to be converted into a motion for summary judgment. The element that triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material. As many cases recognize, it is not relevant how the defense actually is denominated in the motion. The court, sua sponte, may convert a motion under Rule 12(b)(6) into one for summary judgment, but the conversion by the district judge should be exercised with great caution and attention to the parties' procedural rights . . . .[12]

If a court decides to convert a motion to dismiss into a motion for summary judgment, it is important that the parties have notice of the changed status of the motion, and a reasonable opportunity to present all the material that is pertinent to the motion. This notice requirement is critical in cases where a litigant is a prisoner proceeding without the assistance of counsel. The Third Circuit held in *Renchenski v. Williams* that, before converting a motion to dismiss to a motion for summary judgment in a case brought by a *pro se* prisoner, a court must provide the prisoner "with a paper copy of the conversion Order, as well as a copy of Rule 56," and a short summary explaining its import that highlights the utility of a Rule 56(d) affidavit if the plaintiff needs to forestall resolution of the motion to obtain additional discovery.[13] In cases filed by prisoners proceeding *pro se*, converting a motion to

---

[12] *Id.* (footnotes omitted).

[13] *Renchenski v. Williams*, 622 F.3d 315, 340 (3d Cir. 2010). We note, however, that the failure to give adequate notice does not require automatic dismissal in all cases. *Id.* at 341. It may be excused as harmless error where it appears that there is no set of facts on which a plaintiff could possibly recover. *Id.*

dismiss into a motion for summary judgment generally has the effect of needlessly delaying and complicating the action.[14]

### B.   EXHAUSTION UNDER THE PRISON LITIGATION REFORM ACT

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted.[15]

Put simply, the PLRA requires prisoners to pursue their claims through an administrative grievance process before seeking redress in federal court. Exhaustion is mandatory, and applies to all inmate lawsuits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[16]

A prisoner, however, is not required to plead exhaustion in his or her complaint.[17] The failure to exhaust administrative remedies under the PLRA is an

---

[14] *Ribaudo v. Desimone*, No. 3:18-CV-1190, 2019 WL 1906269, at *5 (M.D. Pa. Apr. 5, 2019) *report and recommendation adopted by* 2019 WL 1903404 (M.D. Pa. Apr. 29, 2019); *Escalera v. Harry*, No. 1:15-CV-02132, 2016 WL 6694502, at *7 (M.D. Pa. Sept. 28, 2016) ("The requirement of providing notice—and the delay it entails—could be avoided if the defendants properly frame their motions from the outset.") *report and recommendation adopted by* 2016 WL 6582065 (M.D. Pa. Nov. 7, 2016).

[15] 42 U.S.C. § 1997e(a).

[16] *Porter v. Nussle*, 534 U.S. 516, 532 (2003).

[17] *Jones v. Bock*, 549 U.S. 199, 216-17 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints.").

affirmative defense.[18] Accordingly, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."[19] A motion under 12(b)(6) raising the issue of failure to exhaust is appropriate only in cases where the complaint shows that a prisoner failed to exhaust.[20]

### C.   ELEVENTH AMENDMENT IMMUNITY

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other states."[21] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[22]

---

[18] *Id.*

[19] *Rinaldi v. United States*, 904 F.3d 257, 268 (2018).

[20] *Escalera*, 2016 WL 6694502, at *5 (citing *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (concluding that "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim") and *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse")).

[21] *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016); *Lombardo v. Pennsylvania Dept. of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) ("[t]he Supreme Court extended the Eleventh Amendment's reach to suits by *in-state* plaintiffs, thus barring all private suits against non-consenting States in federal courts.")

[22] U.S. Const. amend. XI.

Subject to certain narrow exceptions, the Eleventh Amendment bars all lawsuits brought in federal court against states regardless of the nature of the relief sought.[23] This immunity extends to subsidiary units of a state, such as state agencies.[24]

The Eleventh Amendment also "bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury."[25] In *Ex parte Young*, the Supreme Court recognized an important exception to this general rule.[26] It found that the Eleventh Amendment does not bar official capacity claims against state officials for prospective declaratory and injunctive relief sought to address a continuing violation of federal law.[27]

In determining if *Ex parte Young* applies, a court:

> "must look to the substance rather than the form of the relief requested to determine whether [the] claims are barred by the Eleventh Amendment." *Blanciak* [*v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996)]. And "[t]he type of prospective relief permitted under *Young* is relief intended to prevent a continuing violation of federal law." *Hindes v. F.D.I.C.*, 137 F.3d 148, 166 (3d Cir. 1998); *see also Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (observing that "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing"). "In determining whether the doctrine of

---

[23] *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).

[24] *Id.*

[25] *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd* 502 U.S. 21 (1991).

[26] *Ex parte Young*, 209 U.S. 123 (1908).

[27] *Penhurst*, 465 U.S. at 102-03.

*Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 296 (1997) (concurring opinion)).[28]

## IV.   DISCUSSION

In their motion, Defendants argue that all claims except for the individual capacity claims against Defendants Vance and Rittenhouse must be dismissed. They contend that:

(1)   Dismissal under Rule 12(b)(6) is appropriate because Plaintiff failed to properly exhaust all claims against Defendants Connolly, Harrell, Taylor, and Argento; and

(2)   All official capacity claims against Defendant Vance and Rittenhouse are barred by the Eleventh Amendment.

Defendants submitted documents outside the operative pleading to support their first argument. Before turning to the merits of the issues raised in Defendants' motion, we must first resolve the issue of whether those documents can be considered to resolve a motion to dismiss. Because we conclude that we cannot consider them, we must also address whether Defendants' motion to dismiss should

---

[28] *Korman v. Pennsylvania State Police Honesdale Barracks*, 3:21-CV-1516, 2023 WL 2224437, at *8 (M.D. Pa. Feb. 24, 2023) (concluding that the plaintiff's claims against a State Trooper were barred by the Eleventh Amendment because the plaintiff's claims were about events that occurred in the past).

be converted to a motion for summary judgment. After resolving these preliminary issues, we will address each of Defendants' arguments.

### A.     THE COURT WILL NOT CONSIDER DEFENDANTS' EXHIBITS OR THE EXHIBITS ATTACHED TO THE ORIGINAL COMPLAINT TO RESOLVE THIS MOTION TO DISMISS

No documents are attached to Plaintiff's amended complaint, nor does the amended complaint reference any exhibit filed with the original complaint. Therefore, the two grievances, the grievance history attached to Defendants' supporting brief, the exhibits attached to Defendants' reply brief, and the exhibits attached to Plaintiff's original complaint are squarely outside the operative pleading.[29]

Defendants do not argue that the grievances, grievance history, or the other documents, are indisputably authentic or matters of public record, were referenced

---

[29] Although the Third Circuit considered an inmate's grievances without converting a motion to dismiss to a motion for summary judgment in *Spruill v. Gillis*, it did so under circumstances that are different than those present in this case. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2018) ("Given that the exhaustion issue turns on indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment."); *Escalera*, 2016 WL 6694502, at *6 ("Although both the district court and the Third Circuit's opinions in *Spruill* seem to suggest that an inmate's actual grievance records are 'indisputably authentic documents,' the Third Circuit has yet to hold, in a published or unpublished opinion, that a district court may consider these documents in support of a defendant's motion to dismiss in a situation other than that presented in *Spruill*, where the plaintiff references the grievances in his complaint to show exhaustion."). Even assuming we could consider the grievances, appeals, and responses under *Spruill*, we are not persuaded we could consider the inmate grievance history "indisputably authentic." *See Washington v. Link*, 750 F.

in the amended complaint, or were intended to be attached to the amended complaint. Thus, Defendants have not demonstrated that these documents may be properly considered without converting their motion.

### B.   THE COURT WILL NOT CONVERT DEFENDANTS' MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT

In this case, the Court cannot consider the documents Defendants presented without converting their motion to a motion for summary judgment. We decline to do so. As observed in *Escalera v. Harry*, dismissal under 12(b)(6) based on the failure to exhaust under the PLRA is rarely appropriate.[30] This case is no exception. Although we have the authority to convert Defendants' motion, we decline to do so in this case.[31]

---

App'x 84, 87 (3d Cir. 2018) (finding that a declaration and screen shots of a state inmate's grievance history are not indisputably authentic for Rule 12(b)(6) purposes). Thus, even if we considered the grievances themselves along with Defendants' motion, dismissal under 12(b)(6) would not be appropriate in the absence of further development as to whether these two grievances are the only relevant grievances.

[30] *Escalera*, 2016 WL 6694502, at *7.

[31] Defendants do not discuss converting this motion in their brief. They do, however, refer to *Mclean v. Harry.* No. 1:19-CV-81, 2020 WL 375742 (M.D. Pa. Jan. 23, 2020). In *Mclean*, the Court exercised its discretion to convert a motion to dismiss into a motion for summary judgment. This case is distinguishable from *Mclean* in two key regards. First, converting this motion to a summary judgment motion does not have the potential to resolve all claims in this case. Defendants do not dispute that Plaintiff has exhausted his claims as to two Defendants, and do not seek dismissal of those claims. Thus, converting the motion will prolong the resolution of this motion and this case. Second, in *Mclean*, it was clear from the face of the complaint that Mclean did not exhaust administrative remedies before

Defendants have not framed their arguments as summary judgment arguments, and the parties have not complied with Local Rule 56.1. We currently do not have the benefit from the sharpening of the factual disputes that is envisioned by that rule. Further, even if we were to convert this motion and find in Defendants' favor, not all claims would be resolved. Given Plaintiff's status as a *pro se* litigant, the notice requirements that must be met because he is a *pro se* prisoner, and the fact that additional documents beyond the two grievances and grievance history report attached to Defendants' supporting brief would need to be considered, we find that conversion under Rule 12(d) would needlessly delay and complicate the resolution of Defendants' pending motion.[32]

Accordingly, we decline to convert Defendants' motion into a motion for summary judgment, and will not consider the evidence attached to their brief.

### C.    IT IS NOT CLEAR FROM THE AMENDED COMPLAINT THAT PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to all claims asserted against Defendants Connolly, Harrell, Argento,

---

initiating a federal lawsuit because the grievances, which were attached to the complaint, were filed five business days before Mclean initiated the federal lawsuit.

[32] In his brief in opposition, Plaintiff argues that his procedural default was excused because "the subsequent filings and responses here evidences knowledge on the part of prison officials not only that there was a problem, but that Connolly, Harold, Argento, and Taylor was involved." (Doc. 47, pp. 5-6). Thus, Defendants attached additional documents to their reply that would also need to be considered.

and Taylor. They argue that Plaintiff did not name any of these Defendants in the two relevant inmate grievances attached to Defendants' brief. As discussed above, we decline to consider those exhibits.

Plaintiff does not allege facts related to the exhaustion of administrative remedies in his amended complaint, and is not required to. Thus, the issue of whether Plaintiff exhausted his administrative remedies in this case requires a factual determination that goes beyond the amended complaint and cannot be resolved in a motion to dismiss under Rule 12(b)(6).[33] Defendants, accordingly, may renew their challenge to administrative exhaustion via a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### D.    THE OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANTS VANCE AND RITTENHOUSE WILL BE DISMISSED

Plaintiff alleges that Defendants Vance and Rittenhouse violated Plaintiff's Eighth Amendment rights when they failed to protect him from Inmate Carter. Regarding Defendant Vance, Plaintiff alleges that Defendant Vance failed to take any action after Plaintiff reported the threat earlier in the day. Regarding Defendant Rittenhouse, Plaintiff alleges Defendant Rittenhouse stood by and did not promptly intervene when Plaintiff was being attacked. Plaintiff sued Defendants Vance and Rittenhouse in their individual and official capacities.

---

[33] *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018).

For the purposes of this motion only, Defendants concede that the Eighth Amendment failure to protect claims against Defendants Vance and Rittenhouse are adequately pleaded. They argue, however, to the extent those claims are brought against Defendants Vance and Rittenhouse in their official capacities, they are barred by the Eleventh Amendment.

In response, Plaintiff argues that the official capacity claims should be permitted to proceed because he is seeking prospective injunctive relief.[34]

In reply, Defendants argue:

> Within the Amended Complaint, Plaintiff describes concrete events that allegedly occurred in the past and are not alleged to be ongoing events. (*See gen*. Doc. 35.) Even when construed liberally, the Amended complaint is devoid of any factual averment that there is any claim of ongoing constitutional harm or violations. (*See id.*) As such, any official capacity claims are barred by the Eleventh Amendment.

(Doc. 48, p. 4).

Initiating a lawsuit against a defendant in his or her official capacity generally represents another way of pleading an action against an entity of which an officer is an agent. Defendants Vance and Rittenhouse are employees of the Pennsylvania Department of Corrections. The Pennsylvania Department of Corrections is a state agency, and an arm of the state that is entitled to Eleventh Amendment immunity.

---

[34] The injunctive relief sought is "permanent separation" from his attacker, and a prohibition against retaliation by Defendants and other Department of Corrections employees. (Doc. 35, p. 16).

The parties do not appear to dispute that to the extent he seeks money damages from Defendants Vance and Rittenhouse in their official capacities, Plaintiff's claims are barred by the Eleventh Amendment. We agree.

Plaintiff argues that his official capacity claims against Defendants Vance and Rittenhouse should proceed as to the injunctive relief he requests. Defendants argue that Plaintiff's request for injunctive relief—permanent separation from Inmate Carter, and a prohibition on future retaliation by prison employees—is not related to an ongoing constitutional violation. We agree. Plaintiff's claims against Defendants Vance and Rittenhouse concern two single events: Defendant Vance's failure to take action in response to Plaintiff's statements; and Defendant Rittenhouse's failure to promptly respond to the assault. These are single events, and clearly are not a continuing violation of Plaintiff's federal rights.

Accordingly, the official capacity claims against Defendants Vance and Rittenhouse will be dismissed, but the individual capacity claims against them will be permitted to proceed.

## V.      CONCLUSION

For the reasons explained herein, we will grant in part and deny in part Defendants' motion to dismiss the amended complaint as follows:

(1)      The official capacity claims against Defendants Vance and Rittenhouse will be DISMISSED with prejudice;

Page 20 of 21

(2) All other claims, including the individual capacity claims against Defendants Vance and Rittenhouse will be permitted to proceed; and

(3) An appropriate order will be issued.

Date: September 29, 2023                    BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge